**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   11-cr-00188-JLK

UNITED STATES OF AMERICA,

       Plaintiff

v.

1. Leslie Renee Hee
       Defendant

---

**MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO 18 USC § 3582(c)(1)(A)(i)**

---

    Defendant Leslie Renee Hee by and through undersigned counsel, respectfully requests the Court modify the term of imprisonment imposed in this matter pursuant to 18 USC § 3582(c)(1)(A)(i).

    Ms. Hee seeks a modification in her sentence to time served or in the alternative to allow her to serve the remainder of her sentence in home detention. The basis of this request is that the defendant has been diagnosed with an immune deficiency disease that places her at grave risk should she contract the virus, COVID 19, which runs rampant in the Bureau of Prisons facility in which she is designated.

    Defendant submits that the Court has jurisdiction to act on this request. The First Step Act of 2018 amended 18 USC § 3582(c)(1)(A)(i) authorizes the sentencing judge to consider defendant's motion for modification of sentence based on extraordinary and compelling reasons when "the defendant has fully exhausted all administrative rights to appeal a failure of Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 USC § 3582(c)(1)(A).

In this matter, the defendant filed her request with Warden Carr requesting compassionate release/reduction in sentence on May 5, 2020. The Warden denied the request on May 15, 2020 (see Exhibit 1 attached). Thirty days having passed since the defendant filed her request, the matter is properly before this Court.

The defendant submits that the Court is authorized to modify her sentence. The First Step Act permits the Court to exercise its discretion to modify a term of imprisonment. The statute provides that the Court "may reduce the term of imprisonment…after considering the factors set forth in (18 USC § 3553(a) to the extent they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 28 USC § 994(t) authorizes the Sentencing Commission to describe what should be considered as extraordinary and compelling reasons. Under section 1B.1.13 the commission authorizes the reduction to a term of imprisonment if the Court finds (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or the community, and (3) the reduction is consistent with the policy statement. In application note 1(A)(ii)(I) the Commission states that a defendant suffering from a serious medical condition does establish an extraordinary and compelling reason. As demonstrated herein, the defendant suffers from a medical condition that places her in an at-risk category should she contract the COVID 19 virus.

Upon the defendant's plea of guilty to violation of 21 USC § 846 and 841(a)(1) and (b)(1)(C) the Court imposed a sentence of 15 years (180 months) on October 15, 2012. The defendant has been continuously incarcerated on this charge since May 5, 2011. She has served over 9 years of the sentence imposed. According to BOP calculations as reflected on its website the defendant has 44 months left to serve with a mandatory out date of February 13, 2024. See BOP website as of June 8, 2020.

On March 11, 2020 the defendant was diagnosed with autoimmune and connective tissue disorder. In part this was based on laboratory tests which

2

identified systemic lupus erythematosus (SLE). (see attached medical records Exhibit 2). BOP physicians recommended the defendant first be referred to a Rheumatologist outside the prison system. Sadly, before that referral and exam could take place, the BOP ceased any inmate transports for such reasons and that restriction will remain in place at least through June 30, 2020. (see Exhibit 3). As such the defendant has received no medical care or medicines to treat the disorder. On April 28, 2020 the defendant sent a letter to Dr. Langham, the clinical director at Carswell. The letter is attached as Exhibit 2a. The defendant's efforts to get an update on her medical condition and care have gone without a response through the date of filing this motion.

The defendant is immunocompromised and thus is at a higher risk for severe illness. (see Exhibit 4 CDC advisory). The CDC has also issued an advisory for correctional and detention facilities. (see attached Exhibit 5). The defendant has been placed in a "quarantine room" with 5 other inmates. Exhibit 5, page 621 recommends that facilities have adequate hygiene supplies and personal protection equipment (PPE). The defendant and her 5 roommates were given 2 clothe masks and told to take good care of them as no more masks would be provided. Hygiene supplies such as soap, hand sanitizer and laundry detergent are all shared.

The defendant is housed at the Federal Medical Facility Carswell camp. This facility adjoins medical facilities for male and female inmates. While BOP policy (Exhibit 3) and CDC recommendations (Exhibit 5 page 721) restricts movement of inmates, the camp facility trash and garbage removal is handled by male inmates from a separate facility. The defendant also reports staff is continually in and out of the Quarantine room. Counsel also understands that staff continuously move between all 3 facilities at Carswell contrary to BOP policy. Since early March, the defendant has been moved to 5 different rooms and has had 25 different roommates. Obviously with the staffs' cross contamination issues and the increased inmate exposure to the defendant, the BOP's efforts at restricting movement and efforts at quarantine are sadly deficient. The defendant reports under current conditions bedding and other

3

linens are washed maybe monthly. Cleaning supplies for the rooms are insufficient in quality and quantity.

In exhibit 5 page 921 the CDC recommends separation to include meals and small groups. Cleanliness and sanitation are obviously important issues. In summary, few if any of the recommended practices are followed by the Carswell facility. It is then little wonder that as of May 26, 2020 FMC Carswell was reported to have 92 positive inmates and 5 positive staff for the virus. However, it is reported that the number of cases at the male facility are in the 100's. On April 29, 2020 the Washington post reported on the tragic death of a female inmate at the Carswell facility. She died shortly after giving birth to a daughter. (see Exhibit 6).

The Justice department through Attorney General Barr has recognized the horror and extreme danger inmates in the custody of the BOP find themselves. On March 26, 2020 he issued a memorandum recommending that the BOP quickly review and attempt to effect transfers of appropriate inmates to in home detention. (see Exhibit 7). On April 3, 2020 Attorney General Barr issued a second memorandum emphasizing the urgency of the situation. (see attached Exhibit 8). He recognizes very clearly that BOP facilities are nothing but ideal petri dishes for the virus and the defenseless inmate. The recommended population for the Carswell camp is 287. See Federal Prison Guidebook Rev. 4 Alan Ellis and J. Michael Henderson see page 486. According to the BOP website on June 8, 2020 the current population at the Carswell camp is 281.

The defendant can only be described as a sitting target for the virus. She suffers from an autoimmune disorder which severely inhibits her body's ability to fight off any virus or infection. Certainly no one foresaw back in 2011 that a world-wide pandemic would occur and kill 100's of thousands of people. No one argues the seriousness of the defendant's criminal conduct but certainly no one thought that a sentence to prison with her current medical condition would pose the risk of death.

. The defendant submits to this Court, that under the authority of the First Step Act and the guidance provided thereunder by the United States Sentencing

Commission, that the confluence of the defendant's medical condition , the COVID 19 virus, and the infections existent at FMC Carswell establish extraordinary and compelling reasons for this Court to consider reducing and or modifying the remainder of the defendant's sentence.  It is also submitted that Congress's intent to diminish the BOP's control over compassionate relief is clear.  By permitting a defendant to file her own motion with the Court demonstrates Congressional desire to place the decision squarely with the Courts.

It is then the Courts duty to apply the requisites of 18 USC 3553(a) to its decision-making process with this motion.  The Defendant in no way depreciates the seriousness of her past criminal conduct.  What she became involved in was dangerous not only to herself but also to her confederates and society as a whole.  She has spent 9 years dealing with that misconduct.  In evaluating the 180 month sentence and considering good time credits which one must assume the Court considered in imposing its sentence, the Defendant has completed over 70% of the sentence.  She also requests that she serve the balance of the sentence only substituting her home for a BOP facility.  It is submitted that the resulting sentence adequately reflects the serious nature of the offense of conviction and promotes respect for the law.

The Court must also be concerned with protecting the public from further criminal conduct on the part of the defendant.  The defendant would suggest to the Court that the most telling evidence of the defendant's current state of mind is her progress while incarcerated.  The Supreme Court has noted the importance here in *Pepper v. U.S.* 562 US 476 (2011).  This Court should consider post offense conduct as the most current picture of the defendant.  It also sheds light on the potential for future criminal conduct by the defendant.

The defendant's record while incarcerated is spotless, having never had an incident report.  (see Exhibit 9 page2).  She does not exhibit any mental health needs (Ex. 9 pg. 3).  Finally, her most recent evaluation reflects that she relates appropriately with staff and peers, can and has maintained healthy relationships, and avoids negative personal influences. (Ex. 9 pg. 3).  The

defendants programming syllabus (Exhibit 10) shows she has successfully completed some 8680 hours of BOP programs.

During her stay at Carswell she has been actively involved with her church. Chaplain Casey Campbell submits a letter of reference (Exhibit 11) on the defendant's behalf. The impression one gleans from Chaplain Campbell's letter is that the defendant is a well-adjusted woman dedicated to her work. Dr. Farid Farooqi also submits a letter of recommendation. (see Exhibit 12). He has supervised the defendant in the religious services department for several years. He reports she is an "educated professional" with excellent leadership and organizational skills. Equally important is his observation of the defendant's commitment to participating in the 12 step program and her appreciation for its assistance in her recovery. This dedication is further evidenced by the certificate of completion of some 708 hours in the Celebrate Recovery Program. (see Exhibit 13).

The Defendant also has worked hard in the dental hygienist program at Carswell. Once again, her supervisor in the program April Tyson submits a letter of recommendation. Of note Ms. Tyson also comments on the defendant's excellent work ethic, ambition, and professionalism. (see Exhibit 14). In her latest review by her case manager Ms. Williamson, she is found to be First Step eligible and a minimum risk for recidivism. (see Exhibit 15). It is submitted that the defendant is the poster child for the inmate who took the Court's advice at sentencing and has used the past 9 years to recognize her wrong doings and make herself a productive and respected member of American society.

The defendant's release and reentry plan is as follows: She will reside with her son-in-law Ross Ingenice and her grandson at 10410 W. Jewel Ave. #C Denver, Co. 80232. At this residence she will have her own bedroom and bathroom. She will be employed and work from her home with the Ben Franklin Group 8260 Grandview Ave. Arvada, Co. 80002. She will maintain Health Insurance for her first 90 days with Colorado's State-Wide Market Place. The living conditions proposed will allow for the defendant to self-quarantine in her

6

own bedroom and bathroom. Neither her son-in-law nor grandson have exhibited and symptoms of the Covid 19 virus.

The defendant believes that with her current medical condition and the presence of the COVID 19 Virus throughout the Carswell facility that she presents extraordinary and compelling reasons for this Court to favorably review her sentence. She further submits that with the time she has served on her sentence and the incredible progress she has made as a human being that under the guidance of 18 USC 3553(a) that this Court can and should favorably reconsider her sentence.

Respectfully submitted this 9th day of June, 2020

/s Daniel T. Smith
*Daniel T. Smith*
4582 S. Ulster #1400
Denver, Co. 80237
Phone: 303-860-8100
Fax: 303-860-8018
E-mail: danieltsmith@qwestoffice.net
Attorney for Leslie Renee Hee

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2020, I electronically filed **DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE PURSUANT TO 18 USC §3582(c)(1)(A)(i)** with the Clerk of Court using the CM/ECF system who will send notification of such filing to all counsel of record.

/s Daniel T. Smith